# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# EL PASO DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § § | |
| **v.** | § § | EP-19-CR-1200-DB |
| **JOSE MANUEL FELIX-FELIX** | § | |

## MEMORANDUM OPINION AND ORDER

On this day, the Court considered Defendant Jose Manuel Felix-Felix's ("Mr. Felix-Felix") "Motion to Dismiss the Indictment" ("Motion"), filed in the above-captioned case on April 25, 2019. On May 6, 2019, the United States of America ("the Government") filed its "Response in Opposition to Defendant's Motion to Dismiss the Indictment" ("Response"). After due consideration, the Court is of the opinion that Mr. Felix-Felix's Motion should be granted.

## BACKGROUND

On April 17, 2019, a Grand Jury sitting in the Western District of Texas returned a single count Indictment ("Indictment"), which charges Mr. Felix-Felix with an alleged illegal reentry into the United States in violation of 8 U.S.C. § 1326(a). Indictment, *United States of America v. Jose Manuel Felix-Felix*, (W.D. Tex. April 17, 2019), ECF No. 10. Specifically, the Indictment alleges that on or about March 25, 2019, Mr. Felix-Felix, an undocumented immigrant who had previously been deported from the United States on or about May 11, 2009, was found in the United States again. *Id.*

On March 30, 2009, the Department of Homeland Security ("DHS") issued Mr. Felix-Felix a Notice to Appear at an immigration hearing. Resp., ECF No. 19, at Ex. B. The Notice to Appear alleged he was subject to removal from the United States for being a noncitizen present in the United States without being admitted or paroled. *Id.* It also stated that Mr. Felix-

Felix was to appear before a United States Department of Justice immigration judge at a specified address. *Id.* But it did not indicate the date and time of that hearing. *Id.* Instead, the Notice to Appear indicated that the hearing would be on a date "to be set" and a time "to be set." *Id.* DHS filed the Notice to Appear with the immigration court. *Id.* at 2.

The immigration court allegedly issued a Notice of Hearing containing the date, time, and place of the initial hearing and served it on Mr. Felix-Felix. *Id.* According to the Government, the immigration officials have represented to the U.S. Attorney's Office that this Notice of Hearing was served. *Id.* at 2 n.2. Because he was detained, however, a copy of the Notice of Hearing was maintained in the Executive Office of Immigration Review record of proceedings, as opposed to his A-File. *Id.* The Government is in the process of obtaining a copy of this notice and will provide it to defense counsel and the Court upon receipt. *Id.* The Government argues that the Court may presume that immigration officials discharged their official duty to provide notice of the hearing. *Id.* (citing *United States v. Armstrong*, 517 U.S. 456, 464 (1996)). However, this Court will not make this presumption as the Government has made an identical argument in the past only to later admit that no record of the Notice of Hearing was ever found in a defendant's record of proceedings. *See* this Court's opinion in *United States v. Miguel Yanez-Gutierrez*, EP-18-CR-3385-DB-1, *2.

On May 11, 2009, the initial immigration hearing took place, at which Mr. Felix-Felix was present, and the immigration judge ordered him removed from the United States. *Id.* at Ex. C. Mr. Felix-Felix waived his right to appeal this order. *Id.* On that same day he was removed from the United States to Mexico. *Id.* at Ex. D. This removal order is the underlying removal order of the instant Indictment. *See id.* at 3. Mr. Felix-Felix's Motion seeks to dismiss this Indictment.

## ANALYSIS

Mr. Felix-Felix petitions the Court to dismiss the Indictment because the immigration court lacked subject matter jurisdiction to issue the original removal order after the Notice to Appear he received failed to include a date and time. Mot., ECF No. 17, at 1–3. Therefore, the removal was void and cannot form the basis for the current indictment for illegal reentry as he was never "removed" as a matter of law. *Id.* at 1.

First, the Government argues that Mr. Felix-Felix cannot meet any of the three § 1326(d) factors that a Defendant must satisfy to collaterally attack the validity of a prior removal. Resp., ECF No. 19, at 1. Second, the Government's Response takes issue with the definition of a Notice to Appear in U.S.C. § 1229(a)(1), as opposed to the regulatory definition in 8 C.F.R. § 1003.15, which does not require a date and time to be in a Notice to Appear. *Id.* at 5–6. Third, the Government argues that the "lawfulness or validity of a prior removal order is not an element of a § 1326 offense." *Id.* at 4. The Court disagrees with the Government for the following reasons.

1. **A Valid Notice to Appear Must Include the Date and Time to Vest Jurisdiction in the Immigration Court.**

According to a holistic analysis of the statutory and regulatory definitions of a Notice to Appear, as well as the Supreme Court's recent opinion in *Pereira v. Sessions*, the incomplete Notice to Appear did not vest jurisdiction, therefore Mr. Felix-Felix's underlying removal was void. The indictment for illegal re-entry should be dismissed.

   a. **The Statutory Definition Controls Over the Regulatory Definition Upon Which the Government Relies.**

The necessary components of a Notice to Appear are provided in two different places. Department of Justice regulation 8 C.F.R. § 1003.15(b) lists the information that must be

3

included in every Notice to Appear, which does not require the Notice to Appear to specify the date and time of the noncitizen's removal hearing. But in 8 U.S.C. § 1229, Congress listed the necessary components of a Notice to Appear, including the "time and place at which the [removal] proceedings will be held." 8 U.S.C. § 1229(a)(1)(G)(i). The Government argues that the regulatory requirements for a Notice to Appear should control. Resp., ECF No. 19, at 9 (citing *Hernandez-Perez v. Whitaker*, 911 F.3d 305, 313 (6th Cir. Dec. 14, 2018) and *Karingithi v. Whitaker*, 913 F.3d 1158 (9th Cir. Jan. 28, 2019)).

A regulation that would give effect to a Notice to Appear that does not include the time and place of removal proceedings would be contrary to the clear and unambiguous intent of Congress. *United States v. Cruz-Jimenez*, No. 17-CR-00063-SS, 2018 U.S. Dist. LEXIS 187870, at *14 (W.D. Tex. Nov. 2, 2018); Order, *Valladares*, No. 17-CR-00156, ECF No. 44, at 10. When reviewing an agency's construction of the statute it administers, a court is "confronted with two questions. First, always, is the question of whether Congress has spoken directly to the issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Cruz-Jimenez*, No. 17-CR-00063-SS, 2018 U.S. Dist. LEXIS 187870 at *15 (quoting *Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984)). Thus, if Congress clearly and unambiguously intended for a Notice to Appear to always include time-and-place information, the regulations may not give effect to a Notice to Appear that fails to include this information.[1] *Cruz-Jimenez*, No. 17-CR-00063-SS, 2018 U.S. Dist. LEXIS 187870 at *15.[2]

---

[1] For further discussion of *Chevron* deference and the constitutional concerns that the Government's arguments raise, see this Court's Opinion in *United States v. Leon-Gonzalez*, 351 F. Supp. 3d 1026, 1031 (W.D. Tex. 2018), *appeal pending* No. 18-51064 (5th Cir.).

[2] For further discussion of Congress's unambiguous intent regarding the contents of an NTA, *see id.* at 1035–36.

4

Moreover, the Government's reading of 8 C.F.R. § 1003.15(b) was expressly rejected by *Pereira* when the Supreme Court held that Notices to Appear must include information specifying the time and place of removal proceedings in all circumstances, not merely where the inclusion of such information was "practicable." *Pereira v. Sessions*, 138 S. Ct. 2105, 2111–13 (2018); *see also* Br. for Resp't, *Pereira v. Sessions*, 138 S. Ct. 2105, at 49 (relying on the "where practicable" language to argue that Notices to Appear did not need to include information about the time and place of removal hearings to trigger the stop-time rule). Indeed, the Supreme Court in *Pereira* acknowledged that the BIA had previously ruled that the stop-time rule could be triggered by a Notice to Appear that did not include the date and time of the removal proceedings because, the BIA reasoned, the regulations required this information only "where practicable." *Pereira*, 138 S. Ct. at 2111–12 (citing *Matter of Camarillo*, 25 I. & N. Dec. 644 (2011)). But because this ruling found "little support in the statute's text," *id.* at 2120 (Kennedy, J., concurring), the Supreme Court rejected it. The Government's position is thus directly contradicted by *Pereira*'s holding that, regulatory language notwithstanding, a Notice to Appear must always include the time and place of removal proceedings.

### b. *Pereira* Applies to a Notice to Appear Outside of the Stop-Time Rule Context, Including a Notice to Appear that Functions as a Charging Document.

The Executive Office of Immigration Review, which encompasses immigration courts, is part of the Department of Justice. *About the Office*, EXECUTIVE OFFICE FOR IMMIGRATION REVIEW (Sept. 20, 2018, 10:37 AM), https://www.justice.gov/eoir/about-office. As such, Congress has said that the Executive Office of Immigration Review is "subject to the direction and regulation of the Attorney General," 6 U.S.C. § 521(a) (2018), including regulations promulgated by the Attorney General. 8 U.S.C. § 1103(g)(2) (2018). Current

Attorney General issued regulations delimit the jurisdiction of immigration courts providing that "[j]urisdiction vests . . . when a *charging document* is filed with the Immigration Court." 8 C.F.R. § 1003.14(a) (2018) (emphasis added). A "charging document" is the "written instrument which initiates a proceeding before an Immigration Judge . . . includ[ing][3] a Notice to Appear." 8 C.F.R. § 1003.13 (2013); *see also Martinez-Garcia v. Ashcroft*, 366 F.3d 732, 735 (9th Cir. 2004) ("The only charging document available after April 1, 1997, is the Notice to Appear.") (citing 8 C.F.R. § 1003.13).[4]

A Notice to Appear must include the time and date of the hearing as required by 8 U.S.C. § 1229(a):

> In removal proceedings under section 1229(a) of this title, written notice (in this section referred to as a "notice to appear") shall be given in person to the alien (or, if personal service is not practicable, through service by mail to the alien or to the alien's counsel of record, if any) specifying the following: . . .
>     (G)(i) *The time and place at which the proceedings will be held.*
>         (ii) The consequences under section 1229(b)(5) of this title of the failure, except under exceptional circumstances, to appear at such proceedings.

8 U.S.C. § 1229 (West) (emphasis added).

The Supreme Court recently examined this statute in the context of an immigration mechanism known as the "stop time rule." *Pereira*, 138 S. Ct. at 2113–14 (2018). The Supreme Court concluded that "[a] notice that does not inform a noncitizen when and where to appear for removal proceedings is not a 'notice to appear under section 1229(a).'" *Id*. The Supreme Court explained that "[i]f the three words 'notice to appear' mean anything in this

---

[3] The Government does not assert that any other charging document was filed in this case. *See generally* Resp., ECF No. 19.
[4] For further discussion, *see* Kit Johnson, *Pereira v. Sessions: A Jurisdictional Surprise for Immigration Courts*, 3 HRLR Online 1, (2018).

context, they must mean that, at a minimum, the Government has to provide noncitizens 'notice' of the information, i.e., the 'time' and 'place,' that would enable them 'to appear' at the removal hearing in the first place." *Id.* at 2115. The Court further noted that the failure to specify "integral information like the time and place of removal proceedings" deprived the Notice to Appear of "its essential character." *Id.* at 2116–17.

The Supreme Court held that "[t]he plain text, the statutory context,[5] and common sense all lead inescapably and unambiguously" to the conclusion that a Notice to Appear that omits time-and-place information is not a Notice to Appear under § 1229 and thus cannot trigger the stop-time rule. *Id.* at 2110. Referring to the doctrine espoused in *Chevron*, the Court accorded no deference to the immigration court's determination of whether time-and-place information must be included in a Notice to Appear because Congress had "supplied a clear and unambiguous answer" to the question. *Pereira*, 138 S. Ct. at 2113–14.

Per *Pereira*, Mr. Felix-Felix's document was not a Notice to Appear under §1229(a) because it did list when and where to appear for removal proceedings. *Id.* at 2110. And if it was not a valid Notice to Appear then it could not be a valid charging document. *See* 8 C.F.R. § 1003.13 (2013). And without a valid charging document, jurisdiction never vested in the immigration court. 8 C.F.R. § 1003.14(a) (2018); *DeLeon-Holguin v. Ashcroft*, 253 F.3d

---

[5] The conclusion that time-and-place information must always be included in a Notice to Appear is also supported by other provisions in the statute. *Pereira, 138 S. Ct.* at 2114 (explaining that statutory language allowing the Government to change or postpone the removal proceedings to a new time or place "presumes that the Government has already served a 'notice to appear'. . . that specified a time and place as required by § 1229(a)(1)(G)(i)."); *id.* at 2114–15 (applying the time-and-place requirement to statutory provision detailing an alien's securing of counsel); *id.* at 2116 ("[W]hen the term 'notice to appear' is used elsewhere in the statutory section, including as the trigger for the stop-time rule, it carries with it the substantive time-and-place criteria required by § 1229(a).").

811, 815 (5th Cir. 2001) ("[R]emoval proceedings commence when the INS[6] files the appropriate charging document with the immigration court."). Any action by the immigration court absent jurisdiction was an *ultra vires* or extra-judicial act, as it exceeded the court's Congressionally-delegated power. *Ashcroft*, 253 F.3d at 815; *see also Arbaugh v. Y&H Corp.*, 546 U.S. 500, 511 (2006)). And every subsequent reinstatement of the prior removal was merely an attempted reinstatement of a legal nullity.

Next, the Government argues that the Supreme Court's decision in *Pereira* to remand the case instead of concluding the immigration court lacked jurisdiction demonstrates that the Supreme Court did not consider a deficient Notice to Appear to be incapable of vesting jurisdiction in the immigration court. Resp., ECF No. 19, at 13. But the Supreme Court had no reason to consider the jurisdiction of the immigration court in Mr. Pereira's removal proceedings. *Cruz-Jimenez*, No. 17-CR-00063-SS, 2018 U.S. Dist. LEXIS 187870 at *19; Order, *Valladares*, No. 17-cr-00156, ECF No. 44, at 13.[7]

Finally, the Government asserts that a recent Fifth Circuit opinion supports its view that *Pereira* should be read narrowly, so that its holding regarding the contents of a Notice to Appear is confined to the context of the stop-time rule.[8] Resp., ECF No. 19, at 13 (citing *Mauricio-Benitez v. Sessions*, 908 F.3d 144 (5th Cir. Nov. 8, 2018)). However, this case is

---

[6] In March 2003, the Immigration and Naturalization Service ("INS") ceased to exist and its functions were transferred to the Department of Homeland Security. *See* Authority of the Secretary of Homeland Security; Delegations of Authority; Immigration Laws, 68 Fed. Reg. 10922 (Mar. 6, 2003).

[7] For further discussion, see this Court's Opinion in *Leon-Gonzalez*, 351 F. Supp. 3d at 1033–34.

[8] There is no indication in *Pereira* itself that a Notice to Appear must include the date and time of the removal hearing only in the context of the stop-time rule. *Cruz-Jimenez*, No. 17-CR-00063-SS, 2018 U.S. Dist. LEXIS 187870, at *6; *United States of America v. Edgar Alfredo Valladares*, No. 17-CR-00156, (W.D. Tex. Oct. 30, 2018), ECF No. 44, at 8. Indeed, *Pereira* does not say that a putative Notice to Appear that omits the time and place of a removal hearing fails to trigger the stop-time rule—it says that such a document is not a Notice to Appear *at all. See Pereira*, 138 S. Ct. at 2115. The date and time go to the "essen[ce]" of a Notice to Appear. *See id.*

8

inapposite for three reasons: first, *Mauricio-Benitez* raised an issue of personal jurisdiction and due process, not subject matter jurisdiction, because of Mr. Mauricio-Benitez's failure to timely correct a spelling error in his mailing address.[9] *Mauricio-Benitez*, 908 F.3d at 146.

Second, while the Fifth Circuit favorably references two district court cases that declined to apply *Pereira* to cases with the same issue as Mr. Felix-Felix's (a Notice to Appear without a date or time), it does so to support its conclusion that cancellation and reopening involve different standards of review. *Id.* at 148 n.1. Therefore, the reopening at issue in *Mauricio-Benitez* could not be resolved by reference to *Pereira*'s conclusions in the context of a cancellation. *Id.* This stands in stark contrast to the procedural posture of this case, which involves no deference to, nor application of, a specific standard of review of a BIA decision, rather it is a Motion to Dismiss for lack of subject matter jurisdiction.

Third, in a footnote, the Fifth Circuit actually supports Mr. Felix-Felix's argument that only a Notice to Appear that complies with § 1229(a)(1) initiates removal proceedings when the court explains that a noncitizen's "period of continuous physical presence for purposes of cancellation ends when . . . served a [sic] NTA that fully complies with the statutory requirements." *Id.* at 148 n.1 (citing *Pereira*, 138 S. Ct. at 2109). The court continued: "[t]he filing of *the NTA*, in turn, initiates removal proceedings against the alien[.]" *Id.* (citing 8 C.F.R. §§ 1003.13, 1003.14(a); emphasis added). It is "unlikely that the Fifth Circuit would explicitly refer to a statutory-compliant NTA in one sentence, but reference a statutorily deficient NTA in the next sentence." *United States v. Zapata-Cortinas*, No. SA-18-CR-00343-OLG, 2018 LEXIS 199042, at *15 n.4 (W.D. Tex. Nov. 20, 2018). Regardless of the Supreme Court's clear

---

[9] For further discussion, see this Court's Opinion in *Leon-Gonzalez*, 351 F. Supp. 3d at 1034.

9

interpretation of the statute, the statute itself plainly states that a Notice to Appear must have a date and time. *Supra* 3–4.

### c. A Notice of Hearing, Should One Exist in This Case, Does Not Cure a Void Notice to Appear.

The Supreme Court rejected another argument the Government advances—that the Notice to Appear met the statutory requirements because the immigration court complied with immigration regulations by providing a later Notice of Hearing with the date and time specified.[10] Resp., ECF No. 19, at 8 and 17; *see Pereira*, 138 S. Ct. at 2113; Br. for Resp't, *Pereira v. Sessions*, No. 17–459, 2018 WL 1557067, at 30, 49 (Mar. 23, 2018). The Supreme Court was not persuaded that this two-step process was sufficient even though the Department of Homeland Security, relying on the regulation's "where practicable" language, "almost always serves noncitizens with notices that fail to specify the time, place, or date of initial removal hearings[.]" *Pereira*, 138 S. Ct. at 2111. It is the Notice to Appear, not a Notice of Hearing, that initiates removal proceedings. 8 C.F.R. § 1003.13. Again, this Court is in doubt about whether a Notice of Hearing was served at all in this case. *See supra* 2.

### 2. Regardless of the § 1326(d) Factors, a Removal Order May Be Challenged for Lack of Subject Matter Jurisdiction and Cannot Be Waived.

Typically, an undocumented immigrant must meet all three requirements of 8 U.S.C. § 1326(d) to collaterally attack the validity of a removal order. These three requirements are: (1) the alien must have exhausted all administrative remedies, (2) the proceedings at which the order was issued must have improperly deprived the alien of the

---

[10] For further discussion of the inability for a subsequent Notice of Hearing to cure an invalid Notice to Appear, *see* this Court's Opinion in *Leon-Gonzalez*, 351 F. Supp. 3d at 1037–38.

opportunity for judicial review, and (3) the entry of the deportation order must have been fundamentally unfair. 8 U.S.C. § 1326(d)(1–3).

But Mr. Felix-Felix's challenge is atypical. *Cruz-Jimenez*, No. 17-CR-00063-SS, 2018 U.S. Dist. LEXIS 187870, at *4. Mr. Felix-Felix contends that because the Government failed to file an effective Notice to Appear, the immigration judge never had jurisdiction to commence removal proceedings. Mot., ECF No. 17, at 1–2. And because the immigration judge never had jurisdiction over the removal proceedings, the resulting removal order was void. *Id.*

### a. A Removal Order May Be Collaterally Attacked as Void for Lack of Subject Matter Jurisdiction.

First, the removal order against Mr. Felix-Felix is an "order from which an appeal lies," which means it is a judgment. *See* 8 C.F.R. § 1003.38(a) ("Decisions of Immigration Judges may be appealed to the [BIA] . . ."); FED. R. CIV. PRO. 54(a). Second, "*any* judgment may be collaterally attacked if it is void for lack of jurisdiction," despite § 1326(d)'s restrictions on the types of collateral attacks that may be made on a deportation order.[11] *Cruz-Jimenez*, No. 17-CR-00063-SS, 2018 U.S. Dist. LEXIS 187870 at *4; Order, *Valladares*, No. 17-CR-00156, (W.D. Tex. Oct. 30, 2018), ECF No. 44, at 3 (citing *Jacuzzi v. Pimienta*, 762 F.3d 419, 420 (5th Cir. 2014) (emphasis in original)); *see e.g. In re Reitnauer*, 152 F.3d 341, 344 n.12 (5th Cir. 1998) ("It is true that (1) jurisdictional defects render a judgment void, and (2) void judgments are subject to collateral attack."). In addition to *Jacuzzi* and *In re Reitnauer*, the Fifth Circuit has specifically held that when the BIA issues a removal order without statutory or regulatory

---

[11] For further discussion of the distinctions between the authorities that the Government relies on for this argument and this case, see this Court's opinion in *id.* at 1029–31.

11

authority the order is rendered "a legal nullity." *James v. Gonzalez*, 464 F.3d 505, 513 (5th Cir. 2006).

### b. The Immigration Court's Subject Matter Jurisdiction Cannot Be Waived.

Because the Fifth Circuit has held that "an alien can forfeit a challenge to the subject matter jurisdiction of the immigration court," the Government argues that any complaint has been waived because Mr. Felix-Felix appeared for the hearing and failed to object. Resp., ECF No. 19, at 16–17 (citing *Sohani v. Gonzales*, 191 Fed. App'x 258, 259 (5th Cir. 2006) ("Because Sohani did not object to the admission of the Notice to Appear [lacking time and date] and conceded removability at the removal hearing, Sohani has waived any challenge to the IJ's jurisdiction over the removal proceedings"), and *Chambers v. Mukasey*, 520 F.3d 445, 449–50 (5th Cir. 2008) (noting that Defendant "waived any challenge to the NTA [Notice to Appear] by appearing at the initial hearing, and pleading to the charges contained in the NTA [Notice to Appear].").

First, the Government's reliance on *United States v. Perez-Arellano*, *Chambers v. Mukaskey*, and *Sohani v. Gonzales* is misplaced. The Fourth Circuit's opinion in *Perez-Arellano* is misdirected as it relies on an undocumented defendant's prior cocaine conviction as the basis for removal and was in a different posture evaluating whether the district court plainly erred. *United States v. Perez-Arellano*, 756 Fed. App'x 291, 294 (4th Cir. Dec. 17, 2018) (unpublished). *Chambers* and *Sohani* involve jurisdictional challenges to a court's lack of personal jurisdiction over the litigant, not a court's subject-matter jurisdiction over the case itself.[12] *Chambers*, 520 F.3d at 449; *Sohani*, 191 Fed. App'x at 259. Interpreting cases such as

---

[12] For further discussion of the factual and procedural background of these cases, see this Court's Opinion in *Leon-Gonzalez*, 351 F. Supp. 3d at 1038–39.

*Chambers* as involving the waiver of objections to the court's personal jurisdiction instead of its subject-matter jurisdiction accords with the general rule that objections to personal jurisdiction may be waived while objections to subject matter jurisdiction may not. *Sohani*, 191 Fed. App'x at 259 (citing *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinée*, 456 U.S. 694, 702–03 (1982). The Court therefore declines to exempt immigration courts from this general rule.

Second, a plain reading of the relevant regulation indicates that it references subject-matter jurisdiction. *See* 8 C.F.R. § 1003.14(a) ("Jurisdiction vests, *and proceedings before an Immigration Judge commence*, when a charging document is filed with the Immigration Court by the Service." (emphasis added)). On its face, 8 C.F.R. § 1003.14(a) concerns whether a case is properly before an immigration court. Thus, "[i]f the [deportation] order is void on its face for want of jurisdiction, it is the duty of this and every other court to disregard it." *Wilson v. Carr*, 41 F.2d 704, 706 (9th Cir. 1930).

As the Supreme Court has explained, "[s]ubject-matter jurisdiction properly comprehended . . . refers to a tribunal's power to hear a case, a matter that can never be forfeited or waived." Order, *Valladares*, No. 17-CR-00156, ECF No. 44, at 16 (citing *Union Pac. R.R. Co. v. Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment, Cent. Region*, 558 U.S. 67, 81 (2009); *Shogunle v. Holder*, 336 F. App'x. 322, 323 (4th Cir. 2009). Because the immigration court is a "tribunal"—that is, a "court of justice or other adjudicatory body," Tribunal, BLACK'S LAW DICTIONARY (10th ed. 2014)—the definition announced in *Union Pacific* applies, and challenges to the immigration court's subject-matter jurisdiction may not be waived. *Id.* Because Mr. Felix-Felix's removal order was entered *ultra vires*, there was no legitimate order from which Mr. Felix-Felix could perfect an appeal. As a result, Mr. Felix-Felix

need not satisfy section 1326(d) because the immigration judge lacked jurisdiction from the outset.[13]

### 3. A Void Removal Means Mr. Felix-Felix Was Not "Removed" as a Matter of Law, and Therefore the Indictment for Illegal Reentry Shall Be Dismissed.

To convict under 8 U.S.C. § 1326(a), the Government must prove three elements: "that the defendant (1) is an alien, (2) was previously deported, and (3) has re-entered the United States without proper permission." *Ortiz*, No. 17-CR-00071-RWG, 2018 U.S. Dist. LEXIS 190986, at *3. Title 8 U.S.C. § 1229(a) grants immigration judges the authority to "conduct proceedings for deciding the inadmissibility or deportability of an alien." *Id.* at *3–4 (citing 8 U.S.C. § 1229a(a)(1)). Such proceedings "shall be the *sole and exclusive* procedure for determining whether an alien may be admitted to the United States or, if the alien has been so admitted, removed from the United States." 8 U.S.C. § 1229a(a)(3) (emphasis added). Therefore, if the immigration judge's actions are void, then no other proceeding can result in the predicate deportation.

The Government argues that the "lawfulness or validity of a prior removal order is not an element of a § 1326 offense." Resp., ECF No. 19, at 19. It cites to *United States v. Mendoza-Lopez* for the proposition that the Government need only prove "the fact of a prior physical removal." *Id.* (citing 481 U.S. 828, 834–35 (1987)). However, *Mendoza-Lopez* supports rather than detracts from Mr. Felix-Felix's arguments because *Mendoza-Lopez*, unlike this opinion, was focused on the § 1326(d) factors and an alleged lack of due process, rather than

---

[13] Mr. Felix-Felix argues that the § 1326(d) three-part test is met and that due process was lacking, however further discussion of these issues it not necessary to the outcome of this opinion given the immigration court's lack of subject matter jurisdiction. But this Court agrees and adopts the analysis of Judge Pitman in his opinion regarding the satisfaction of the § 1326(d) three-part test in an almost identical context. *See United States v. Lopez-Urgel*, No. 18-CR-310-RP, 2018 U.S. Dist. LEXIS 193858 (W.D. Tex. Nov. 14, 2018).

14

a lack of subject matter jurisdiction, and yet it still found that a "collateral attack could be mounted where the deportation proceeding effectively eliminate[d] the right of the alien to obtain judicial review." *Mendoza-Lopez*, 481 U.S. at 839. The exhaustion and judicial review requirements in § 1326(d) are directed at examining decisions that may not comport with due process and surely that standard requires an immigration judge's decision be anchored in an exercise of proper jurisdiction. *United States v. Omniel Robaina Ortiz*, No. 17-CR-00071-RWG, 2018 U.S. Dist. LEXIS 190986, at *9 (D.N.D. Nov. 7, 2018) (citing *United States v. Mendoza-Lopez*, 481 U.S. 828 (1987)). Finally, unlike the Government's assertion, this is not a question of a "valid" or "invalid" removal order, but the fact of a "legal nullity." *See supra* 5–6.

## CONCLUSION

After due consideration, the Court finds that Defendant's Motion should be granted. The immigration court lacked subject matter jurisdiction when it failed to comply with the statutory guidelines by proceeding with removal when the Notice to Appear, the charging document that vests jurisdiction in the court, lacked a date and time. Therefore, the Government cannot satisfy the plain language of § 1326 because Mr. Felix-Felix was not previously removed as a matter of law.

Accordingly, **IT IS HEREBY ORDERED** that Defendant Jose Manuel Felix-Felix's "Motion to Dismiss Indictment" is **GRANTED**.

SIGNED this 21ST day of May 2019.

THE HONORABLE DAVID BRIONES
SENIOR UNITED STATES DISTRICT JUDGE